UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL MELVIN ET AL.,** : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 21-3209 (PBT) |
| : | |
| **INJUSTICE WATCH NFP doing** : | |
| **Business as THE PLAIN VIEW** : | |
| **PROJECT AND CITY OF** : | |
| **PHILADELPHIA,** : | |
| : | |
| Defendants. : | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

On October 21, 2021 Plaintiffs filed an untimely Response in Opposition to the City's Motion to Dismiss (the "Response") without leave of Court [ECF Nos. 17,18]. The City files this brief reply memorandum in support of its Motion.

**ARGUMENT**

I.   **First Amendment Claims**

As discussed below, the Facebook posts attached to the Motion to Dismiss were not protected as a matter of law and the Court's analysis could (and should) end there. However, *even if* some of those posts published by PVP were protected, and *even if* some of those allegedly protected posts formed the basis of their discipline—the Plaintiffs cannot plausibly argue that "but for" the allegedly protected posts they would not have been terminated, especially when weighed against the sheer number of clearly unprotected posts attributed to each Plaintiff. *See* Mot. to Dismiss at Ex. C.

1

While the *Pickering* balancing test is fact-intensive, it is still one of law and can be decided at this point based on the undisputed facts already on the record.[1] To reiterate, Plaintiffs do not dispute they authored the posts attributed to them by the City in the Motion to Dismiss. The City does not dispute (for purposes of the Motion to Dismiss only) that Plaintiffs wrote the posts as private citizens and that the posts touched upon areas of public concern. Because the parties do not dispute these first two factors, this Court need only decide if the Plaintiffs' First Amendment interests outweighed the potential disruption to PPD's operational interests under the *Pickering* balancing test.

On this point (and contrary to Plaintiffs' argument at pp. 11, 21-24), the City does not need to prove—at any point in the case—that the posts *actually* caused disruption.[2] A showing of

---

[1] Other Courts have applied *Pickering* balancing at the pleadings stage. *See* Mot. to Dismiss at p. 18, n.11; *see also Garza v. Escobar*, 972 F.3d 721, 728 (5th Cir. 2020) (where the reasonable inferences drawn from a complaint do not "plausibly show that the employee's interests outweigh the employers . . . *Pickering* balancing can be performed at the motion-to-dismiss stage . . . . it would be 'illogical to say that something is a question of law, and that it is reviewed de novo, yet it can never be decided on the pleadings.'" (quoting *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)); *see also Phillips v. Cty. of Dallas*, 781 F.3d 772 (5th Cir. 2015) (*Pickering* analysis done on a 12(c) motion); *Duke v. Hamil*, 997 F. Supp. 2d 1291 (N.D. Ga. 2014) (on motion to dismiss, university police officer's interest in Facebook post of confederate flag captioned with "It's time to start another revolution" did not outweigh employer's operational interests and maintaining public trust).

[2] Although not required to defeat Plaintiffs' claims, City still maintains that the nationwide publication of the posts by the Plain View Project and Buzzfeed is in of itself sufficient to establish actual disruption. *See* Mot. to Dismiss at pp. 28-29. The PAC Report attached to the Complaint confirms that actual disruption occurred: "Residents of Philadelphia were quick to react to the posts and comments revealed by the PVP database. There were numerous protests, community meetings, and opinion pieces." Compl. Ex. 2 (PAC Report at p. 2). Plaintiffs suggest that this Court should discount the disruption caused by the publication and the public reaction to the posts, stating "[c]learly there is discontent over the Plaintiffs' Facebook postings, but that does not render their speech presumptively disruptive." Response at p. 31. However, in this case, because the police department directly serves the public and has contact with them, the public's reaction to the posts is extremely relevant to the disruptiveness analysis. *See, e.g., Festa v. Westchester Med. Ctr. Health Network*, 380 F. Supp. 3d 308, 318-19 (S.D.N.Y. 2019) ("Where a Government employee's job quintessentially involves public contact, the Government may

probable future disruption can satisfy the balancing test, so long as the employer's prediction is reasonable. *See Waters v. Churchill,* 511 U.S. 661, 673 (1994) (plurality opinion). Here, the PPD based its disciplinary decisions on a reasonable prediction that racist, violent, and Islamophobic speech would be disruptive—categories already substantiated as categorically disruptive, as a matter of law, to police and fire departments in by several other courts (hence, the "*per se*" language used in the Motion to Dismiss). *See* Mot. to Dismiss at pp. 21-30 (discussing in *Pappas*, *Locurto*, *Sabatini*, and *Grutzmacher*). Given the deference afforded to police departments in particular to regulate disruptive employee speech, even at the pleadings stage, the posts as alleged were disruptive. *See Kelley v. Johnson*, 425 U.S. 238, 246 (1976). As such, the Court should find that the Plaintiffs' Facebook posts attached in Exhibit C to the Motion to Dismiss were unprotected as a matter of law and its First Amendment retaliation analysis can end there. *See, e.g.*, *Fogarty v. Boles*, 121 F.3d 886, 890 (3d Cir. 1997) (absent plaintiff's showing "protected" speech, he could not sustain a claim for First Amendment retaliation). [3]

Plaintiffs argue the City cannot prevail because the PPD did not point to specific posts as the basis for discipline, also noting that PVP published "other" posts by Plaintiffs (not attached to the Motion to Dismiss) that may have potentially resulted in discipline. Even if this were true,

---

take into account the public's perception of that employee's expressive acts in determining whether those acts are disruptive to the Government's operations.").

[3] Plaintiffs also argue that because the Facebook posts are "old" they were not "disruptive." *See* Pl.'s Response at p. 27 ("[N]one of these postings is related temporally to the discipline actions against Plaintiffs and cannot reasonably be found to have disrupted the operations of the PPD.") The age and attempted anonymity of the posts are considerations that have no bearing on whether the posts are disruptive to the PPD's integrity and mission. The fact that the posts were found in 2019, nationally published, and subsequently discovered by PPD is the controlling consideration. When the posts gained national attention in 2019, the die was cast—upon their discovery, the Police Department could not, and did not, turn a blind eye.

the Plain View Project published at least one, if not many, unprotected posts attributable to each Plaintiff, as set forth in Exhibit C to the Motion to Dismiss. However, even if PPD *did* discipline any of the plaintiffs for "protected" posts (which the City does not concede), the Plaintiffs cannot plausibly argue that the PPD would have reached a different disciplinary decision if any alleged "protected posts" were out of the picture. *See Mt. Healthy City Sch. Dist. Board of Educ. v. Doyle*, 429 U.S. 274 (1977) (defendants may defeat retaliation claim if the same action would have been taken in absence of the protected conduct). This Court does not need to ignore common sense, Plaintiffs' argument that *some* of their speech may be protected does not render their claimed entitlement to relief plausible in this case. *See, e.g.*, *Muti v. Schmidt*, 118 F. App'x 646, 649 n.1 (3d Cir. 2004) (nonprecedential) ("Typically, [the *Mt. Healthy* test] is a fact-based inquiry not appropriate for the resolution upon a motion to dismiss. Nevertheless, we agree with the District Court we can dismiss Muti's claim as a matter of law because the detailed factual allegations in the complaint demonstrate that his [protected] speech activity was not a substantial motivating factor in his termination.").

## II. Fourteenth Amendment Due Process and Equal Protection Claims

### A. Plaintiffs do not have standing to assert a claim under the vagueness doctrine.

Plaintiffs assert that they have standing to bring a Fourteenth Amendment claim because the Social Media Policy under which they were punished was too vague for Plaintiffs to know what conduct was forbidden and arbitrarily enforced. *See* Response at pp. 29-30. However, Plaintiffs cannot establish standing under the vagueness doctrine because the Social Media Policy has clearly defined parameters, which were undoubtedly violated by the Plaintiffs' Facebook posts. *See* Section V.A. on pp. 31-33 of Defendant's Motion to Dismiss. To the extent

that Plaintiffs assert that the Police Department applied its Social Media Policy unevenly, uneven application would not allow for a facial claim against the policy itself.

   **B. Plaintiffs have not adequately alleged a violation of their procedural due process or equal protection rights.**

Much like their Complaint, Plaintiffs continue to repeat vaguely that PPD discharged Plaintiffs "*without any due process*." Response at pp. 1-2.  Again, at no point do Plaintiffs articulate specifically how they were deprived of notice and an opportunity for a hearing through the well-established PPD (and still ongoing) grievance and arbitration procedures.  *See* Mot. to Dismiss at pp. 34-35.

Plaintiffs' equal protection claims also remain undeveloped.  Although unclear, it seems that Plaintiffs allege equal protection violations when compared to two different groups of officers: (1) other officers who were flagged in the PVP database but "were given lesser discipline" (referred to as the "PVP Officers") and (2) officers not named in the PVP database "but who made similar social media postings." *See* Response at pp. 2, 16.

First, with respect to the PVP Officers, Plaintiffs claim that the disciplinary metrics used by the PPD in the wake of PVP's mass exposé were unfair.  To be specific, the PAC Report labeled this metric as the "5/10 Metric" and described it as: "Anyone holding the rank of police officer was eligible for serious discipline if they had 10 or more posts.  Anyone holding a supervisory rank was eligible for serious discipline if they had 5 or more posts.  In addition to this metric, the content of the posts and comments was also considered." Response at pp. 12 (citing PAC Report at p. 18).[4]  Even if this were the metric PPD used, this metric is not

---

[4] The PAC Report is attached as Ex. 2 to the Complaint. While the PAC Report criticized the "5/10 metric" for focusing on number as opposed to quality of posts, this criticism alone (and Plaintiffs' unsupported opinion) does not render it fundamentally unfair so as to violate Plaintiffs' due process or equal protection rights.  In fact, the entire PAC Report advocated for harsher

"arbitrary" or "capricious" (as Plaintiffs have described it) but rather provides a sliding scale of discipline based on the number and severity of posts.  It follows, then, that the PVP Officers who had fewer disruptive posts cannot be considered a "similarly situated" class to sustain an equal protection claim.

Secondly, Plaintiffs did not sufficiently allege an equal protection claim with respect to the second comparator group—mostly African-American officers not named in the PVP database "but who made similar social media postings."  *See* Response at p. 16.  Instead of articulating why these officers are in fact "similarly situated" to them, Plaintiffs simply regurgitate the same copied and pasted (and largely illegible) posts from their Complaint without further analysis.  Again, and as set forth in the Motion to Dismiss, these officers cannot be considered a "similarly situated class" where Plaintiffs failed to even allege that the PPD knew these posts existed at the time Plaintiffs were disciplined.  Further, Plaintiffs failed allege municipal liability for these equal protection claims under *Monell* because they did not articulate any established PPD policy or custom that intentionally discriminates on the basis of race, religion, or political viewpoint.  Accordingly, and like their due process claims, Plaintiffs' equal protection claims should be dismissed.

---

punishment for the involved officers and frequently noted how offensive and disruptive the officers' posts were.  *See, e.g.*, PAC Report at p. 2 ("The PVP database revealed that some officers advertise beliefs that negatively impact their ability, or the public perception of their ability, to police equitably and carry out the PPD oath to serve with honor, integrity, and respect.  *Aside from the many obvious harms done*, when the public loses trust in the police, it only makes a police officer's job more difficult and less safe." (emphasis added)); *id.* at p. 24 ("[A] stronger response from the Department with more officers punished more severely for discriminatory language, would have sent a stronger message about will and will not be tolerated by PPD leadership).

### III. Plaintiffs abandoned their Second Amendment claims.

As set forth in the City's Motion to Dismiss, Plaintiffs' Second Amendment claims are squarely time-barred. *See* Mot. to Dismiss at p. 39-40. Because Plaintiffs failed to address this argument in their Response, they have abandoned this claim and as such, this Court should dismiss those claims with prejudice. *See, e.g.*, *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 384 (E.D. Pa. 2019) ("[f[ailure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed." (internal quotation marks and citations omitted)); *Levy-Tatum v. Navient Sol., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (dismissing claims with prejudice where plaintiff failed to make substantive arguments against dismissal).[5]

Respectfully submitted,

**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**

/s/ *Meghan A. Byrnes*
Meghan A. Byrnes
Dated: November 9, 2021    Deputy City Solicitor

---

[5] Lastly, Plaintiffs, assert that they are seeking "declaratory relief" for alleged violations of the Pennsylvania Constitution. Defendants first note that it is unclear specifically what sort of declaratory or injunctive relief is sought by the Plaintiffs. Second, to the extent that Plaintiffs seek compensatory or monetary relief for violations of the Pennsylvania constitution, those requests should be dismissed because the Pennsylvania Constitution does not establish a private cause of action for damages. *Dooley v. City of Phila.*, 153 F. Supp. 2d 628, 663 (E.D. Pa. 2001); *see also Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006), *appeal denied*, 909 A.2d 1291 (Pa. 2006) ("To date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution[.]"). As such, Plaintiffs' claims under the Pennsylvania Constitution should be dismissed.