IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MELVIN, DANIEL FARRELLY, BRION MILLIGAN, MARK PALMA, ROBERT BANNAN, JESUS CRUZ, STEVEN HARTZELL, JOSEPH FOX | : : : : : : | CIVIL ACTION |
| v. | : : | NO. 21-3209 |
| CITY OF PHILADELPHIA | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                       **July 29, 2022**

      The City of Philadelphia either fired or caused eight Philadelphia police officers to resign before being fired for posting racist, Islamophobic, and violent material on Facebook citing the Police Department's Directive 6.10, §§ 4.I., J. prohibiting employees from using ethnic slurs, profanity, personal insults, and harassing material. The Officers now sue the City for violating their right to free speech under the First Amendment, a vagueness and overbreadth challenge to the Directive under the Fourteenth Amendment, an "as applied" challenge to the Police Department's Directive under the Fourteenth Amendment, a violation of the Second Amendment for the City's restriction on their firearms for a period, and a violation of their right to free speech in violation of Pennsylvania Constitution, Art. 1, Section 7.[1]

      The City moves to dismiss the Complaint. We will not dismiss the First Amendment claims today but defer ruling on these claims pending our Court of Appeals's pending review of the same issue in *Fenico v. City of Philadelphia*.[2] We deny the City's motion on the Pennsylvania Constitutional claim. We grant the City's motion on the Officers' Second Amendment claim as withdrawn. We grant the City's motion on the Fourteenth Amendment due process and equal

protection claims with leave to amend consistent with this opinion except for the void for vagueness facial challenge to the Directive which we dismiss with prejudice.

I.   **Alleged facts**

Injustice Watch NFP launched "The Plain View Project" (the "Project") in 2016 to create a database of public Facebook posts and comments made by current and former police officers from across the United States including from Philadelphia police officers.[3] Two reporters from Injustice Watch began contacting some Philadelphia police officers identified in the Project's database in early 2019.[4] The reporters told the officers of their posts identified in the database and asked to speak with them. The Officers notified their supervisors and the Fraternal Order of Police representatives who advised them not to respond to the reporters.[5]

The Project published an article about the database on Buzzfeed in June 2019 and various news outlets across the country copied the article.[6] This national reporting came to the attention of the Philadelphia Police Department which launched an investigation. The Department removed the Officers from their usual posts, confiscated their firearms, transferred them to administrative duty, and prohibited each of them from taking police action on or off duty and from carrying a firearm on or off duty during a period of "administrative restrictions."[7] The administrative restrictions period continued until mid-July 2019. The Department served each Officer a notice from then-Police Commissioner Richard Ross advising of their suspension for thirty days with intent to dismiss.[8] Philadelphia police officers Michael Melvin, Mark Palma, Robert Bannan, Jesus Cruz, Steven Hartzell, and Joseph Fox resigned rather than risk termination.[9] The City terminated Officers Daniel Farrelly and Brion Milligan.[10]

**II.     Analysis**

The Officers, who never affirmatively plead their race or religion or any other membership in a protected class, allege they are the victims of reverse racial and religious discrimination.[11] They allege Sergeant Derrick Lyles, a supervisory officer, had six Facebook posts littered with "racism against white people, combined with strong anti-conservative sentiments, with an anti-Christian bent as well for good measure" but the Police Department never disciplined him.[12] The Officers do not plead the race or religion of Sergeant Lyles. The Officers also cite examples of Facebook posts identified in the *Fenico v. City of Philadelphia* case.[13] The Officers do not plead the race or religion of the two other officers cited from the *Fenico* case.

The Officers allege unequal treatment by the City in terminating them – but not others – "based on their exercise of free speech, … by selectively crying 'I'm offended' where the offending material derived from white-skinned and/or Christian police officers only."[14]

The Officers here and in *Fenico* challenge the Department's Directive 6.10, §§ 4.I., J. on Social Media and Networking as unconstitutionally vague and overbroad as applied to them in their exercise of free speech.[15] Section 4 of the Directive sets out the policy on the use of social media by members of the Philadelphia Police Department. Plaintiffs challenge subsections I and J:

> Employees are prohibited from using ethnic slurs, profanity, personal insults; material that is harassing, defamatory, fraudulent, or discriminatory, or other content or communications that would not be acceptable in a City workplace under City or agency policy or practice.

> Employees are prohibited from displaying sexually explicit images, cartoons, jokes, messages or other material that would be considered in violation of the City Policy Preventing Sexual Harassment in City Government.[16]

The City moves to dismiss.[17] It argues: (1) the First Amendment claim should be dismissed because the Police Department had adequate justification to discipline the Officers'

3

disruptive speech; (2) the Officers fail to allege a due process violation under the Fourteenth Amendment, lack standing to assert a vagueness and an "as applied" overbreadth challenge, and cannot show an equal protection violation; (3) the Second Amendment claims are time-barred; and (4) the Pennsylvania Constitutional claims fail as a matter of law.[18]

### A. We deny dismissing the First Amendment claim today as we defer ruling until further guidance in *Fenico* from our Court of Appeals.

In both *Fenico* and this case, the City argues the Officers' First Amendment claim must be dismissed because the Facebook posts by the offers are "*per se* disruptive." The parties agreed at oral argument this issue should be held in abeyance pending our Court of Appeals' decision in *Fenico* where the sole issue is whether the City of Philadelphia's disciplinary action against the officers based solely on the exercise of their free speech rights to speak out on issues of public concern violates their constitutional rights as guaranteed by the First Amendment of the United States Constitution.[19]

The officers in *Fenico* challenge the same conduct by the City in response to Facebook postings uncovered by the Plain View Project. After hearing argument from counsel, we will hold in abeyance the First Amendment issue in this case pending decision from our Court of Appeals. We find no reason to offer our analysis while it appears the same issue is before our Court of Appeals.

### B. We dismiss the Pennsylvania Constitutional claim with leave to plead permissible declaratory relief.

The City moves to dismiss the Officers' claims for a violation of the Pennsylvania Constitution. Pennsylvania law does not establish a private cause of action for money damages.[20] Pennsylvania law, however, allows injunctive relief under the Pennsylvania Constitution.[21]

4

The Officers concede they are not entitled to money damages under the Pennsylvania Constitution. They are seeking only declaratory relief the City's actions violated their rights under Article I, Section 7 of the Pennsylvania Constitution.[22] The Officers ask us to declare the City's action in disciplining them violated their state constitutional rights to "freely exercise their freedom of speech."[23] The City replies it is "unclear" what type of declaratory or injunctive relief is sought and, to the extent the Officers seek compensatory or monetary relief for violations of the Pennsylvania Constitution, those requests should be dismissed.[24]

The Officers clarified at oral argument they seek reinstatement to their jobs and back pay. They do not plead relief in the form of reinstatement. The City argues a request for back pay constitutes monetary relief and reinstatement involves issues of federal and state comity precluding relief.

We deny the City's motion to dismiss as declaratory and injunctive relief are available under the Pennsylvania Constitution. We allow the Officers to amend their complaint to clarify the type of injunctive or declaratory relief they seek under the Pennsylvania Constitution.

**C. We grant the City's motion to dismiss the Second Amendment claim as withdrawn.**

The Officers claim the City deprived them of their right to bear arms by ordering them not to possess and carry their own personal firearms during the time they were on administrative suspension in violation of the Second Amendment.[25] The City argues the claims are time-barred by Pennsylvania's two-year statute of limitations applied to section 1983 claims. Officers allege the Department put them on restricted duty, including a surrender of their service weapons and a restriction on carrying their private weapons while off-duty, on June 5, 2019. Officers did not bring this action until June 19, 2021 over two years and one month later. The Officers did not respond to the City's motion to dismiss the Second Amendment claims.

5

The Officers withdrew their Second Amendment claim at oral argument. We grant the City's motion to dismiss the Second Amendment claim as withdrawn.

**D. We grant the City's motion to dismiss the Fourteenth Amendment claims with leave to amend an overbreadth, "as applied" claims, equal protection and due process claims.**

The Officers assert two claims under the Fourteenth Amendment: (1) a due process vague and unconstitutionally broad "as applied" challenge to the Police Department's Direction 6.10 §§ 4.I., J. ; and (2) an equal protection claim. We dismiss the Officers' Fourteenth Amendment claims with leave to amend if they can do so under Rule 11.

**1. We dismiss the Officers' facial challenges and "as applied" challenges to Directive 6.10.**

The Officers allege the Department's Directive 6.10 at sections 4. I. and J. is unconstitutionally vague and overbroad "as applied" to them because the Directive does not reasonably inform them of the type of proscribed speech which could result in termination. The City makes two arguments for dismissal of the vagueness and overbreadth challenge and "as applied" challenge: (1) the claims fail as a matter of law because the Officers lack standing to assert a vagueness argument where their violent, racist, and Islamophobic posts fall well within the Directive's proscriptions and there is no such thing as an "as applied" overbroad theory; and (2) any other "free-floating and conclusory" due process claim, without more detail, are insufficient.

We are unclear from the complaint and oral argument whether the Officers make a facial challenge or an as-applied challenge to Directive 6.10, §§ 4.I., J. The Officers suggested at oral argument they are making both a facial challenge and an as-applied challenge but could not cite where they plead these theories. A facial attack to the Directive challenges its constitutionality "based on its text alone and does not consider the facts or circumstances of a particular case."[26]

An as-applied attack "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."[27] We gather from oral argument the Officers intend to make an as-applied challenge because they believe the City's application of the Directive to them deprived them of their First Amendment right to free speech.

### *A facial challenge to Directive 6.10, §§ 4.I., J. based on overbreadth and vagueness.*

A facial challenge to the overbreadth and vagueness of Directive 6.10 §§ 4, I. J. is a challenge to the law as "invalid *in toto* – and therefore incapable of any valid application."[28] An overbreadth challenge is a facial attack on a regulation of speech.[29] The doctrine of overbreadth is an exception to the Supreme Court's "normal rule regarding the standards for facial challenges" to a statute.[30] A statute may be "overbroad" where it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" and will "invalidate *all* enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'"[31] The Supreme Court provides the "expansive remedy" under the overbreadth doctrine "out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech …."[32] An overbreadth challenge recognizes a statute's "plainly legitimate sweep" but one that "reaches too far."[33]

A statute is unconstitutionally vague when, looking at the challenged law as a whole, a person of ordinary intelligence is unable to ascertain the conduct prohibited by the challenged statute.[34] "A facial challenge to vagueness will be upheld if 'the enactment is impermissibly vague in all of its applications'" but a "more stringent vagueness test should apply" when speech is

7

involved.³⁵ The vagueness doctrine is "based on the idea of fairness" and "[i]ts purpose is only to give 'fair warning' of prohibited conduct."³⁶

In the context of public employment, the vagueness doctrine "is based on fair notice that certain conduct puts persons at risk of discharge. Such standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge."³⁷ We examine vagueness "on a case by case basis" and we examine the statute or standard "as to whether it is vague as applied to the affected party."³⁸

When reviewing a facial challenge to the overbreadth and vagueness of a law, our "first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."³⁹ If the challenged law does not reach a substantial amount of constitutionally protected conduct, the overbreadth challenge "must fail" and we then examine the facial vagueness challenge.⁴⁰ "[A]ssuming the enactment implicates no constitutionally protected conduct, [we] should uphold the [vagueness] challenge only if the enactment is impermissibly vague in all of its applications."⁴¹

### *An "as applied" challenge to Directive 6.10, §§ 4.I., J.*

"An 'as applied' challenge is a claim that the operation of a statute is unconstitutional in a particular case while a facial challenge indicates that the statute may rarely or never be constitutionally applied."⁴² The distinction between a facial attack and an as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in the complaint."⁴³ The remedy for a facial challenge is the broad invalidation of the statute but the remedy for an as-applied challenge bars its enforcement against a particular person under "narrowed circumstances."⁴⁴ Courts will address an as-applied challenge before addressing a facial challenge.⁴⁵

8

***The City moves to dismiss the facial challenge and as-applied challenge
to Directive 6.10, §§ 4.I., J.***

The City moves to dismiss the Officers' challenges to Directive 6.10, §§ 4.I., J. arguing: (1) they lack standing to assert vagueness; and, (2) there is no theory as an "as applied" overbreadth challenge.

The Officers did not address the overbroad challenge in their response brief. At oral argument, the Officers confirmed they are making an overbroad challenge but could not cite allegations supporting it. We dismiss the overbreadth challenge as not plausibly pleaded but will allow the Officers leave to amend their complaint to plead such a claim if they can do so under Rule 11.

The parties focus their briefing on the void for vagueness doctrine. The City argues the Officers do not have standing to challenge Directive 6.10, §§ 4.I.J. because their Facebook posts fall within the "hard core" of the Directive's targeted speech – "ethnic slurs, profanity, personal insults, material that is harassing, defamatory, fraudulent, or discriminatory, or other content and communications that would not be acceptable in a City workplace under City or agency policy or practice." The City cites *Rode v. Dellarciprete*[46] and *Broadrick v. Oklahoma*.[47] The City's "hard core" argument is derived from the Supreme Court's decision in *Broadrick*. There the Court addressed a facial challenge based on vagueness and overbreadth to an Oklahoma statute restricting political activities of state civil servants similar to the federal Hatch Act proscribing partisan political activities of federal employees.[48] Examining the language of the Oklahoma statute for vagueness, the Court held the statute is not unconstitutionally vague because "even if the outermost boundaries of [the Oklahoma statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."[49]

In *Rode*, a civilian employee of the Pennsylvania State Police challenged as unconstitutionally vague a State Police regulation requiring employees to "conduct themselves at all times in such a manner as to reflect most favorably on the Department and the Commonwealth thereby promoting good public relations. Undesirable conduct shall include immorality or any conduct not specifically mentioned in these rules which tends to bring the Department and/or Commonwealth into disrepute or reflects discredit upon the individual employee."[50] Ms. Rode commented to a reporter she believed she had been harassed because of racial animus in the State Police. The State Police suspended her employment for several days based on her statement to the reporter in violation of the regulation.[51]

Ms. Rode challenged the regulation as vague and overbroad. Our Court of Appeals held Ms. Rode did not have standing to challenge the vagueness of the regulation because it "clearly applies to her conduct."[52] It explained an individual has standing to challenge a provision on vagueness grounds "only if it is vague as applied to that person" and "when a litigant's conduct clearly falls within the permissible purview of a statute, such an individual lacks standing to challenge the statute of vagueness, even though the statute may well be vague as applied to others."[53] Our Court of Appeals found Ms. Rode did not have standing to challenge the regulation on vagueness grounds because her conduct suggesting racial animus within the State Police is conduct likely to bring the State Police into "disrepute" as provided in the regulation. Ms. Rode did not have standing to challenge vagueness and the district court "should not have addressed the question."[54]

The Officers' postings which include brandishing a weapon in the context of transgendered persons use of a ladies' restroom, Islamophobic images and comments, and promoting violence fall well within Directive 6.10 sections 4. I. and J. prohibiting "ethnic slurs, profanity, personal

insults; material that is harassing, defamatory, fraudulent, or discriminatory, or other content or communications that would not be acceptable in a City workplace under City or agency policy or practice" and prohibiting the display of "sexually explicit images, cartoons, jokes, messages or other material that would be considered in violation of the City Policy Preventing Sexual Harassment in City Government." We dismiss the vagueness challenge with prejudice.

The City does not brief the as-applied challenge, perhaps conflating a facial challenge based on vagueness with an as-applied theory. The Officers appear to claim the City improperly applied Directive 6.10 to their speech. The Officers must allege "they were engaged in constitutionally protected conduct and that the conduct was a 'substantial' or 'motivating factor' in the [City's] decision."[55] They make no such allegations. We will allow the Officers to amend their complaint to state an "as-applied" challenge if they can do so under Rule 11.

### *We dismiss general references to due process claims.*

The Officers refer to a deprivation of "due process" throughout their Complaint.[56] The City argues the references to "due process" constitute "free-floating" claims that are so vague it is unclear whether the Officers intend to pursue substantive or procedural due process claims. The Officers' response fails to address the City's objection. As currently pleaded, we cannot determine the basis of the Officers' due process claim(s), whether they are attempting to plead a procedural or substantive due process claim, and the factual bases for any such claims. We grant the City's motion to dismiss due process claims with leave to amend if the Officers can do so under Rule 11.

### 2. We dismiss the Officers' equal protection claims.

The City moves to dismiss the Officers' claim the Department selectively enforced the Directive against them while not enforcing the Directive against other officers, specifically Sergeant Derrick Lyles and two other officers from the *Fenico* case.[57] The City argues the Officers

cannot show comparators are similarly situated to sustain an equal protection claim or the Department knew the comparators' posts existed. The City also argues the Officers fail to allege municipal liability for their equal protection claims under *Monell* because they fail to allege a policy or custom intentionally discriminating on the basis of race, religion, or viewpoint. Plaintiffs respond by pointing to the posts of other Officers who were not disciplined.

### *The Officers' selective enforcement theory.*

The Officers clarified at oral argument their equal protection claim is based on a "selective enforcement" theory. Our Court of Appeals recognizes several types of equal protection claims, including "selective enforcement." "The Equal Protection Clause prohibits the 'selective enforcement' of a law based on an unjustifiable standard."[58] To establish a selective enforcement claim, the Officers must show: (1) they were treated differently from others similarly situated, and (2) the selective treatment is "based on an unjustifiable standard, such as race, religion, or some other arbitrary factor, … or to prevent the exercise of a fundamental right."[59] They must also show "an element of intentional or purposeful discrimination."[60] There must be discriminatory purpose, "not mere unequal treatment or adverse effect."[61] There must be a showing a "decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects."[62] "A federal constitutional violation does not exist merely because of the 'exercise of some selectivity in enforcement.'"[63]

The Officers fail to plead a selective enforcement claim. The Officers fail to plead how they were treated differently from other similarly situated officers and how that treatment is based on an unjustifiable standard. The Officers fail to allege their race, religion, gender, or some other arbitrary factor used by the City to treat them differently than other officers of a different race, religion, or gender. They do not come close to alleging "clear and intentional discrimination." The

Officers allege the City disciplined them for their posts but did not discipline other officers who posted similarly objectionable material as prohibited by Directive 6.10, §§ 4. I, J. The Officers do not plead their race, religion, gender or other protected characteristic or of their alleged comparators. They do not plead facts of systemic discriminatory purpose.[64] "The law cannot provide a constitutional remedy for every situation where a party may feel slighted; claims appealing to the Equal Protection Clause must meet a higher bar."[65] We grant the City's motion and dismiss the Officers' selective enforcement equal protection claim with leave to amend.

### *Municipal liability under Monell is not an issue today.*[66]

The City also argues the Officers cannot hold it liable on a municipal liability theory under *Monell* because they fail to allege the discriminatory treatment is a result of a municipal policy or custom. The Officers do not specifically address *Monell*, but argue the City's "arbitrary practice, custom, usage and policy have the effect of intentionally, and without a rational basis, treating [them] differently from others who are similarly situated …."[67]

Under *Monell*, a municipality like the City is not liable for the unconstitutional actions of its employees simply because of their employment.[68] But the City may be liable if the Officers show the City's "policy or custom" violated their constitutional rights.[69] There are two ways the Officers may seek to hold the City liable on a municipal liability claim under section 1983: (1) an unconstitutional policy or custom of the City led to their injuries; or (2) their injuries were caused by a failure, including a failure-to-train, or inadequacy by the City "reflect[ing] a deliberate or conscious choice."[70]

We do not read the Officers' complaint as an attempt to hold the City liable for the conduct of one of its employees precluded by *Monell* absent an alleged unconstitutional policy or custom. We instead read the allegations as a claim against the City itself for enforcing Directive 6.10

arbitrarily in violation of the Fourteenth Amendment's equal protection clause. We deny the City's motion based on a *Monell* objection.

**III.    Conclusion**

The Officers do not presently plead a claim other than possibly under the First Amendment now before our Court of Appeals. They do not specify the declaratory relief available to them under the Pennsylvania Constitution. They withdraw their Second Amendment claim. They do not plead claims under the Fourteenth Amendment either by way of an overbreadth challenge and "as applied" challenge to Directive 6.10, §§ 4.I., J., an equal protection claim, or a due process claim. We grant the Officers leave to timely amend these allegations if they can do so consistent with Rule 11 to specifically allege the declaratory relief available to them under the Pennsylvania Constitution, an overbreadth challenge and "as applied" challenge to Directive 6.10, §§ 4.I., J., and Fourteenth Amendment equal protection and due process claims. We dismiss the vagueness challenge with prejudice as the Officers lack standing.

---

[1] The Officers also sued Injustice Watch, d/b/a The Plain View Project. Plaintiffs voluntarily dismissed The Plain View Project under Rule 41(a)(1)(i) in November 2021. ECF Doc. No. 19.

[2] Appeals No. 22-1326. In *Fenico*, twelve Philadelphia Police Officers challenged the City's discipline of them after they posted inappropriate content on social media in violation of their First Amendment rights and other claims. The Honorable Petrese B. Tucker granted the City's motion to dismiss and dismissed the Officers' claims with prejudice. *Fenico v. City of Phila.*, No. 20-3336, --- F. Supp. 3d ---, 2022 WL 226069 (E.D. Pa. Jan. 26, 2022). The Officers appealed only the First Amendment issue.  Both the Officers and the City now concede the issues are related. But they did not disclose the existence of the related issues in this case to our Court of Appeals in *Fenico*. We order the City to do so next week.

[3] ECF Doc. No. 1, Complaint ¶¶ 16–17.

[4] *Id.* ¶ 22.

[5] *Id.* ¶¶ 22–23.

---

[6] *Id.* ¶ 24. The article is entitled "Cops Across the U.S. Have Been Exposed Posting Racist and Violent Things on Facebook. Here's the Proof." *Id.*, n. 10. The City, through the Philadelphia Police Advisory Commission ("PAC"), investigated the Police Department's response to The Plain View Project and issued a report publicly in October 2020. *Id.* ¶ 33.

[7] *Id.* ¶ 25.

[8] *Id.* ¶ 26.

[9] *Id.* ¶¶ 68, 96, 108, 109, 112, 114.

[10] *Id.* ¶¶ 69, 86.

[11] *Id.* ¶¶ 34–35.

[12] *Id.* ¶ 36.

[13] *Id.* ¶ 37. The officers in *Fenico* alleged other officers posting racist and inflammatory language and anti-Trump sentiment were not punished by the City.

[14] *Id.* ¶ 38.

[15] *Id.* ¶¶ 122–124.

[16] ECF Doc. No. 1–1.

[17] ECF Doc. No. 14. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert*

*W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[18] ECF Doc. No. 14.

[19] *Fenico v. City of Phila.*, No. 22-1326, Doc. 7–1, Concise Summary of the Case. The Officers advised us they conferred with the City before oral argument and both parties agreed this case should be held in abeyance until our Court of Appeals decides *Fenico*. Although only the First Amendment claim is on appeal in *Fenico*, counsel for the Officers argued we should hold the entire case in abeyance, including the Pennsylvania Constitutional and Fourteenth Amendment equal protection claims, to avoid piecemeal determinations. Through the course of oral argument, the Officers and the City changed their position and agreed we may address the City's motion to dismiss the non-First Amendment claims. When we asked the Officers about Judge Tucker's decision in *Fenico* dismissing with prejudice the Officers' claims under the Pennsylvania Constitution and Fourteenth Amendment due process claims, including standing to raise a vagueness challenge to conduct clearly within Directive 6.10, the Officers argued only there are different facts between this case and the Officers' conduct in *Fenico*.

[20] *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[21] *Id.* at 688. *See also Issac v. Marsh*, No. 20-1993, 2020 WL 6504637, at * 5 (M.D. Pa. Nov. 5, 2020) (claims seeking damages under the Pennsylvania Constitution subject to dismissal but claims seeking declaratory and injunctive relief may proceed).

[22] Article I, Section 7 of Pennsylvania's Constitution provides:

> The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. ***The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty***. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall

have the right to determine the law and the facts, under the direction of the court, as in other cases.

Pa. Const. Art. I, § 7 (emphasis added).

[23] ECF Doc. No. 1, Complaint at Prayer for Relief ¶ 2.

[24] ECF Doc. No. 22 at 7, n. 5.

[25] ECF Doc. No. 1, Complaint at ¶¶ 129–30.

[26] *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

[27] *Id.*

[28] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, n.5 (1982).

[29] *United States v. Yung*, 37 4th 70, 76 (3d Cir. 2022).

[30] *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). *See also United States v. Stevens*, 559 U.S. 460, 473 (2010) (in the First Amendment context, the Court recognizes "'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep'") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)).

[31] *Hicks*, 539 U.S. at 118–19 (emphasis in original) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

[32] *Id.* at 119.

[33] *Free Speech Coalition, Inc. v. Att'y Gen. United States*, 974 F.3d 408, 427 (3d Cir. 2020).

[34] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)); *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631 (3d Cir. 2013).

[35] *Greenberg v. Goodrich*, --- F. Supp. 3d ---, 2022 WL 874953, at * 35 (E.D. Pa. Mar. 24, 2022) (cleaned up).

[36] *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

[37] *Id.* (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)).

[38] *Id.* (citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).

---

[39] *Vill. of Hoffman Estates*, 455 U.S. at 494 (footnote omitted).

[40] *Id.* at 494–95.

[41] *Id.*

[42] *Benezet Consulting LLC v. Sec'y Commonwealth of Pa.*, 26 F.4th 580, 585 (3d Cir. 2022) (quoting 16 C.J.S. Constitutional Law § 243)).

[43] *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

[44] *Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723, 737 (E.D. Pa. 2015) (citing *CMR D.N. Corp.*, 703 F.3d at 624).

[45] *Id.* at 738 (citing *United States v. Mitchell*, 652 F.3d 387, 406 (3d Cir. 2011)).

[46] 845 F. 2d 1195 (3d Cir. 1988). The City also cites *Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 546 (M.D. Pa. 2012), *aff'd*, 600 F. App'x 847 (3d Cir. 2015). In *Loscombe*, the court addressed a vagueness challenge to the City of Scranton's ordinance suspending firemen's pension payments if, after being pensioned, the fireman enters the service of the City in any capacity with compensation. Mr. Loscombe, a pensioned fireman, alleged the City's ordinance impermissibly restricted his political speech by preventing him from accepting a position on the Scranton City Council. The court found the challenged ordinance is not void for vagueness and dismissed the Fifth Amendment void for vagueness claim with prejudice. *Id.* at 546.

[47] 413 U.S. 601, 607-08 (1973).

[48] 413 U.S. at 603.

[49] *Id.* at 608.

[50] *Rode*, 845 F.2d at 1199.

[51] *Id.*

[52] *Id.* at 1200. We appreciate the courts reviewed Ms. Rode's claims on a summary judgment standard rather than our present review under the City's motion to dismiss. But the issue of standing can and should be addressed as soon as practicable and we are not deterred from reviewing standing at this stage.

[53] *Id.* (citations omitted).

[54] *Id.*

[55] *Id.*

[56] *See* ECF Doc. No. 1, Complaint ¶¶ 21, 24, 32, n .22, 38, 40, 41, 42, 55, 118, 123.

[57] *See* ECF Doc. No. 1, Complaint ¶¶ 35–45.

[58] *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006)).

[59] *Id.* (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010)).

[60] *Id.* (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)).

[61] *Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Servs*, 693 F.3d 359, 363 (3d Cir. 2012) (citing *Snowden*, 321 U.S. at 8).

[62] *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

[63] *Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

[64] *See PG Pub. Co.*, 705 F.3d at 115 (dismissing selective enforcement claim).

[65] *Id.*

[66] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

[67] ECF Doc. No. 18 at 31.

[68] *Monell*, 436 U.S. at 691.

[69] *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)).

[70] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).